UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE HENSLEY,

      Plaintiff,

v.                                                              Case No. 4:06-cv-101

COMMISSIONER OF SOCIAL                       Hon. Hugh W. Brenneman, Jr.
SECURITY,

      Defendant.

_____/

**OPINION**

Plaintiff brings this *pro se* action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on March 31, 1966, graduated from high school and attended college (AR 51, 73, 318).[1] On January 3, 2001, she suffered back injuries from a slip and fall at work (AR 51, 171, 414). Plaintiff filed the present claim in September 2003 (AR 294-95).[2] Plaintiff identified her disabling condition as lower back problems (swelling and constant spasms) and vision problems (AR 312). Plaintiff stated that her eye problems first bothered her about 30 years prior to filing her claim (AR 312). Plaintiff also stated that her back problems first bothered her on January 3, 2000, and was unable to work because of the condition as of January 3, 2001 (AR 312). Plaintiff had previous employment as a housekeeper, guest attendant at a hotel, machine operator at a factory,

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] The court notes that plaintiff has previously filed six unsuccessful claims seeking DIB and SSI (AR 256).

service associate at a hospital, and a short driver for a newspaper (AR 80-85). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on March 9, 2006 (AR 16-23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff met the insured status requirements of the Social Security Act through at least March 31, 2007, and that she he had not engaged in substantial gainful activity since the alleged onset of disability (AR 18). In a decision entered December 20, 2002, the ALJ found that plaintiff was not disabled (AR 256-64). The ALJ found no basis to re-open this decision, and established plaintiff's alleged disability onset date as December 21, 2002 (AR 16, 19, 23, 444). Plaintiff does not seek to re-open the 2002 decision.

Second, the ALJ found that plaintiff had severe impairments of chronic low back pain and obesity (AR 18). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in

4

20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20).  The ALJ decided at the fourth step that plaintiff had the residual functional capacity to perform sedentary work activities:

> except that she can stand/walk a total of about 1.5 hours per eight-hour work day, with normal breaks; she can occasionally push/pull with the bilateral lower extremities; she can do no more than occasional postural maneuvers and is never to engage in climbing of ropes, ladders, and scaffolds; she needs to avoid concentrated exposure to hazardous machinery; she needs to avoid working at unprotected heights; and she is precluded from work tasks requiring bilateral visual acuity, depth perception, and bilateral visual fields.  In addition, she requires a sit/stand option with the opportunity to change position every 30 minutes.

(AR 20). The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, "but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible" (AR 20).  The ALJ further concluded that plaintiff was unable to perform her past relevant work (AR 21).

At the fifth step, the ALJ determined that plaintiff was capable of performing a range of sedentary work (AR 22).  Specifically, the ALJ found that an individual with plaintiff's limitations could perform the requirements of the following jobs in Michigan: cashier (7,300 jobs); ticket seller (4,800 jobs); information clerk (4,400 jobs); and telemarketer (3,600 jobs) (AR 22).  Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act from December 21, 2002 through the date of the decision (AR 23).

### III.  ANALYSIS

Plaintiff raises two general issues on appeal.  The first is set forth in sub-paragraph A, below, and is divided into several parts.

    **A.**   **The ALJ erred in finding that plaintiff can perform substantial gainful activity.**

    **1.**   **Treating physician's statement that plaintiff is disabled.**

5

Plaintiff contends that the ALJ erred by rejecting a statement from her treating physician, Joseph A. Bruno, M.D., that she was not capable of gainful employment. The statement is set forth in Dr. Bruno's office notes of April 19, 2001, which reads in pertinent part, "[a]t the moment I do not believe she is capable of gainful employment" (AR 142). Although Dr. Bruno was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled"). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

Furthermore, Dr. Bruno's office notes reflected plaintiff's condition on April 19, 2001. The Commissioner has determined that plaintiff was not disabled prior to December 20, 2002 (AR 19, 256-64). Plaintiff sets forth no basis to re-open that decision. Accordingly, Dr. Bruno's opinion that plaintiff was not capable of working on April 19, 2001 is not relevant to plaintiff's present claim, which is limited to her condition since December 21, 2002. *See* 42 U.S.C. § 405(h) ("[t]he findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing").

**2.    The ALJ's residual functional capacity (RFC) determination.**

Next, plaintiff contends that the record does not support the ALJ's conclusion that she can perform work for an eight-hour workday with normal breaks. The court disagrees. The ALJ based his RFC determination on the limitations identified by a state agency physician and the results

of Ms. Belcher's functional capacity evaluation (AR 20, 263). The non-examining state agency physician reviewed plaintiff's medical records and determined that plaintiff could stand and/or walk with normal breaks for a total of 1.5 hours in an 8-hour workday and sit with normal breaks for about six hours in an 8-hour workday, but "must periodically alternate sitting and standing to relieve pain or discomfort" (AR 374). The state agency physician included "normal breaks" in concluding that plaintiff could perform her duties during an 8-hour workday (AR 374). An ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation").

The ALJ also relied upon Ms. Belcher's conclusion that plaintiff had limited tolerance for static standing and sitting (AR 20). Ms. Belcher, an occupational therapist and "Certified Specialist in Functional Assessment" evaluated plaintiff on July 21, 2004 (AR 381-86). After performing a number of tests over a three-hour period, Ms. Belcher summarized plaintiff's functional limitations as follows: plaintiff describes several areas of pain in the upper and lower back which worsen with activity; she demonstrates non competitive speed and endurance for upper extremity tasks; she has a decreased range of motion and flexibility that limits lifting to waist level and above to 5 to 10 pounds; she has a push/pull limit to 15 pounds; she has limited tolerance for static standing and sitting; and she has difficulty transitioning between postures (AR 382). Based upon her evaluation, Ms. Belcher made the following recommendation:

> Client should be encouraged to increase overall activity level and endurance for functional tasks such as walking, and sustained upper extremity use. Employment will need to be sedentary with lifting limited to waist level and above. Work will need to be self-paced with position changes as needed.

(AR 382).

The ALJ could properly incorporate Ms. Belcher's conclusions in his findings. Although Ms. Belcher was not a physician, her opinions can be considered as evidence from a non-medical source. *See* 20 C.F.R. §§ 404.1513(e)(4), 416.913(e) (evidence from "other" non-medical sources includes information from therapists). Accordingly, substantial evidence supports the ALJ's determination that plaintiff could work an entire 8-hour workday.

### 3. Plaintiff's medical history

Next, plaintiff states that she meets the 12-month requirement for a disability because she has been in continuous treatment for her conditions, with her last treatment occurring in August 2005.

In his decision, the ALJ outlined the meager medical record in this case since December 21, 2002 (AR 19). The ALJ found that on August 4, 2005, plaintiff sought emergency medical attention for back pain (AR 19). At that time, "[i]t was noted that she had been doing well for the last year and a half, but in the last week she was beginning to experience back pain" (AR 19). The following history is set forth in the emergency room records:

> This patient had a herniated disk at the L5 level and finished rehabilitation in January 2004. She has been doing well for this last year and a half, but in the last week she was beginning to have back pain . . . She is doing her normal job and has done nothing unusual that would aggravate her back that she is aware of.

(AR 387). The radiologist found that while an MRI of plaintiff's lumbar spine from August 4, 2005 showed evidence of disk protrusion at the L5-S1 level, there had been no appreciable changes in the spine when compared with a previous MRI of January 31, 2002 (AR 20, 389-90).

Plaintiff contends that the ALJ's evaluation of the medical evidence is flawed, pointing out that she suffers from long-term problems and that her failure to see a physician for one

8

year does not detract from her disability claim. Again, the court has to disagree. The ALJ's decision included the findings made by the physicians during plaintiff's emergency room visit, i.e., plaintiff's history that "[s]he has been doing well for this last year and a half," and the absence of any objective medical evidence that her back condition had deteriorated since January 2002. These records, which indicate that plaintiff did not require medical treatment for a long period of time, detract from plaintiff's claim and support the ALJ's decision that she was not under a disability as defined by the Social Security Act.

### 4. Plaintiff's visual impairments

Plaintiff contends that the ALJ did not address her visual impairments, i.e., the total lack of vision in her right eye, in which she wears a prosthesis (AR 450). The ALJ found that plaintiff had a glass implant in her right eye and visual acuity in her left eye of 20/25 with corrective lenses (AR 19). While the ALJ found that these visual impairments did not significantly limit her ability to perform basic work activities identified in 20 C.F.R. §§ 404.1521 and 404.921 (i.e., a "severe impairment"), he found that "the resulting restriction against work tasks requiring bilateral visual activity, depth perception, and bilateral visual fields has been considered in the residual functional capacity" (AR 19). The ALJ incorporated these limitations in the RFC determination, which restricted plaintiff from "work tasks requiring bilateral visual acuity, depth perception, and bilateral visual fields" (AR 20). Thus, it is evident the ALJ did address plaintiff's visual impairments.

### 5.     Plaintiff's side effects from medication

Next, plaintiff disputes the ALJ's finding that the medical evidence did not support her claim of disabling side effects from medication (AR 21). Specifically, the ALJ concluded that "[t]here was no mention of any adverse effects from taking Vicodin about twice a day" (AR 21).

Allegations of a medication's side effects must be supported by objective medical evidence. *Farhat v. Secretary of Health and Human Servs.*, No. 91-1925, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992). *See*, *e.g.*, *Bentley v. Commissoner of Social Security*, No. 00-6403, 2001 WL 1450803 at *1 (6th Cir. Nov. 6, 2001) (noting absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect").

First, plaintiff points out that on August 29, 2002, Dr. Bruno stopped prescribing Vioxx because it may have contributed to swelling of the hands and ankles (AR 351). Because this alleged side effect occurred before December 21, 2002, it is not relevant to plaintiff's present disability claim.

Second,  plaintiff testified that Vicodin made her drowsy and dizzy, and that she was switched from Vicodin to prevent her addiction to that narcotic (AR 452-54).  It appears that plaintiff gave conflicting evidence regarding her Vicodin use. Dr. Bruno's records indicate that plaintiff was prescribed Vicodin as early as August 2002 (AR 351).  On October 8, 2003, Dr. Bruno prescribed plaintiff Darvocet instead of Vicodin (AR 351).  The doctor noted that plaintiff was last seen in August 2002, that she had been in jail, and that "[t]he use of her Darvocet will have to be carefully monitored" (AR 351).  Dr. Bruno also noted that plaintiff "became very defensive when I told her it would be best to not be taking Vicodin" (AR 351).  On January 9, 2004, plaintiff reported to examining physician Ralph Lazzara, M.D., that "[s]he used to take Vicodin and Vioxx and that did

not help her so she now takes Darvocet every 8 hours" (AR 367). However, plaintiff did not report any disabling side effects of Vicodin to Dr. Lazzara (AR 367).

In her "claimant's medications" form, plaintiff contradicts this medical history when states that she was first prescribed Vicodin on August 4, 2005 by Dr. Kovacs (the emergency room physician) (AR 344, 387-92). Plaintiff testified at the hearing on August 17, 2005 that she takes two 500mg doses of Vicodin daily (AR 452). Finally, on September 12, 2005, plaintiff reported to Jennifer Johnson, M.D., at the University of Michigan Health Systems, that she was taking Vicodin for pain, with a dosage of "about 2 per day" (AR 395). Plaintiff did not mention any side effects from Vicodin at that time (AR 394-97).

Plaintiff has apparently used Vicodin intermittently since 2002. However, the medical record does not include any reports that plaintiff suffered from disabling drowsiness or dizziness from the Vicodin. Based on this record, the ALJ could properly discount plaintiff's claim that she suffered from disabling side effects from this medication.

Plaintiff has raised a further issue, set forth in sub-paragraph B.

### B. Plaintiff cannot perform sedentary work.

### 1. Opinions expressed by Richard Ilka, M.D.

Plaintiff relies on the opinion expressed by Richard Ilka, M.D. to support her claim that she cannot perform sedentary work (AR 158-92). When Dr. Ilka examined plaintiff on February 14, 2001 (approximately six weeks after her slip and fall), he gave the following impression of her condition:

> This hospital housekeeper has a history of a slip and fall outside the helicopter hangar in January of this year and has had constant pain ever since then. Her symptoms do not define radiculopathy. They are not physiological in that she describes an upward radiation of pain from the lumbar spine. She presents as a

> highly antalgic patient with florid signs of symptom magnification. I was unable to find any objective evidence for radiculopathy or nerve root impingement, nor were there any objective signs of residuals to the slip and fall incident which she described.
>
> My impression is that, to the extent her current symptoms are organic, they are related to her massive obesity which quantitatively is measured by a BMI of 44, placing her in the extreme obesity category. Another personal factor contributing to her subjective symptoms is the sedentary, even vegetative, lifestyle she has pursued since this incident. These personal factors are the most likely etiology for her current pain behaviors.

(AR 176-77).

Dr. Ilka's opinion, like the other opinions regarding plaintiff's condition prior to December 21, 2002, is not relevant to plaintiff's present claim. Furthermore, even if the court considered Dr. Ilka's opinion, it tends to support the ALJ's decision. Dr. Ilka opined that plaintiff's symptoms were the result of her personal choice to pursue a "sedentary, even vegetative, lifestyle" rather than any physical injury. Such an opinion does not support plaintiff's claim that she suffers from a disabling back injury.

### 2. The vocational expert's testimony

Finally, plaintiff contends that the testimony of Ms. Ross, the vocational expert (VE) was "purely speculation."

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only

include those limitations which the ALJ accepts as credible.  *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228,  231 (6th Cir. 1990).  *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the ALJ's hypothetical questions posed to the VE included the restrictions as set forth in the ALJ's RFC determination (AR 459-61).  The VE determined that an individual with these limitations could perform approximately 20,100 sedentary jobs (AR 459-61).  Contrary to plaintiff's contention, the VE's testimony was not "purely speculation," but based upon appropriate hypothetical questions posed by the ALJ.

## IV.  CONCLUSION

The ALJ's determination of plaintiff's residual functional capacity, taken together with the testimony of the  vocational expert, provides substantial evidence to support the ALJ's finding that there are a significant number of jobs in the relevant economy that plaintiff can perform. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g).  A judgment order consistent with this opinion shall be issued forthwith.


Dated:  September 17, 2007                               /s/ Hugh W. Brenneman, Jr.
                                                         HUGH W. BRENNEMAN, JR.
                                                         United States Magistrate Judge